# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| MAYOR RANDALL L. WOODFIN, et al., | } } } |
| PLAINTIFFS, | } } CASE NO. } 2:25-CV-00352-ECM } |
| VS. | } } |
| GOVERNOR KAY IVEY, | } } |
| DEFENDANT. | } } |

## PLAINTIFFS' REPLY BRIEF

**COME NOW,** the Honorable Mayor Randall L. Woodfin, officially as Mayor of the City of Birmingham, and individually as a citizen and ratepayer for water services provided by the Birmingham Water Works Board; Clinton P. Woods, officially as a Birmingham City Council member, and individually as a citizen and ratepayer for water services provided by the Birmingham Water Works Board; Hunter Williams, officially as a Birmingham City Council member; Valerie A. Abbott, officially as a Birmingham City Council member and individually as a citizen and ratepayer for water services provided by the Birmingham Water Works Board; Jonathan T. Moore, officially as a Birmingham City Council member, and individually as a citizen and ratepayer for water services provided by the

Birmingham Water Works Board; Darrell O'Quinn, officially as a Birmingham City Council member, and individually as a citizen and ratepayer for water services provided by the Birmingham Water Works Board; Crystal Smitherman, officially as a Birmingham City Council member; Wardine T. Alexander, officially as a Birmingham City Council member; Carol E. Clarke officially as a Birmingham City Council member, and individually as a citizen and ratepayer for water services provided by the Birmingham Water Works Board; LaTonya Tate, officially as a Birmingham City Council member, and individually as a citizen and ratepayer for water services provided by the Birmingham Water Works Board; and the City of Birmingham, a municipal corporation (referenced hereafter collectively as the "City Plaintiffs"), by and through their attorneys of record, and hereby file this reply brief in reply to Defendant's Opposition and in support of their Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and Declaratory Relief. (Docs. 14 and 2, respectively). In support of their brief, the City Plaintiffs state the following:

## INTRODUCTION AND SUPPLEMENTAL FACTS

In addition to the facts set forth in its supplemental brief filed on May 8, 2025, the City Plaintiffs add the following: The Elyton Land Company established a public water system to serve the City in 1872, and that water system expanded and changed ownership several times. The City of Birmingham purchased it in 1951 and

established an independent water board pursuant to Alabama Act 1936-37, Ex. Sess., No. 228, as amended by Act 1949-686 (Now codified as Title 11, Chapter 50, Article 8, Code of Alabama). The Birmingham Water Works system has expanded every decade since then. The system now contains four water sources and more than 4000 miles of transmission lines.[1] The BWWB operated the Water Works until 1998, when it was again sold to the City. The City maintained ownership of the Water Works for two years before selling it back to the BWWB, when it was declared a separate entity from the City.[2]

Additionally, the City Plaintiffs vehemently dispute the Defendant's arguments that SB330 impacts "regional water works boards" or "such boards." The BWWB is the only existing water works board that is sufficiently large enough to be covered by, and not specifically excluded from the impact of SB330. SB330 was created solely to strip the control and voting strength of the City Plaintiffs. This is evidenced by the fact that, since SB330's signing, neither the Governor, nor the Lieutenant Governor, have made appointments to any other municipal water works boards in the state except for the BWWB.

---

[1] For the foregoing, please see https://www.bwwb.org/about.

[2] For the foregoing, please see Birmingham Water Works: What is it? Where did it come from? And who's holding the reins? - al.com

## ELEVENTH AMENDMENT IMMUNITY DOES NOT APPLY

The City Plaintiffs have pleaded and demonstrated an exception to 11th Amendment immunity. As established by *Ex parte Young*, state officials may be enjoined from violating federal law by implementing an unconstitutional law. While the Defendant's response makes it appear that she is a passive participant in this action, the objective facts disagree. Governor Ivey has signed SB330 into law and exercised her power to affirmatively make an appointment to the state-created board under the alleged authority of SB330. This and other appointments compel the City Plaintiffs to file an amended complaint to add additional defendants and adjust the substance of their Complaint. With regard to the current matter, the City Plaintiffs have demonstrated the Defendant's ongoing and continuous violation of federal law, thereby satisfying the *Ex parte Young* exception.

## THE COMPLAINT IS NOT A SHOTGUN PLEADING

The Defendant improperly characterized the City Plaintiffs' Complaint as a "shotgun" pleading. The City Plaintiffs vehemently dispute that assertion. The City Plaintiffs' claims are clearly articulated in the Complaint and further expounded on in their subsequent pleadings and demonstrate the factual basis and the legal authority identified in each cause of action. Additionally, the claims presented are in a manner that would not make it difficult for the Defendant to understand and therefore frame a responsive pleading. *Brown v. Dunn*, 760 F. Supp. 3d 1326, 1344-

1345 (M.D. Ala. 2024). "Comprehension, not perfection, is the standard of pleading rules." *Id*. at 1344. As is expressed above, the City Plaintiffs intend to file an Amended Complaint to add additional defendants and clarify the substance of their Complaint.

## **INDIVIDUAL CITY PLAINTIFFS HAVE STANDING**

In order to maintain an action in federal court, a plaintiff must allege a distinct and palpable injury. *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 n. 11 (11th Cir. 2006). With regard to the individual City Plaintiffs, SB330 substantially dilutes (by 67%) their ability to select their representation to the BWWB. That dilution constitutes a violation of their Equal Protection rights, their Due Process rights, and their rights under the Voting Rights Act.

### EQUAL PROTECTION

The City is not asserting a Fourteenth Amendment claim. Instead, the individual City Plaintiffs' rights under the Fourteenth Amendment have been violated. The selection scheme mandated by SB330 deprives the individual City Plaintiffs of the effective and meaningful participation in the affairs of the BWWB by diluting only the City Plaintiffs' appointment authority. SB330 clearly discriminates against the City Plaintiffs, impermissibly treating them differently than similarly situated ratepayers based on their race. SB330 affords disproportionate control of the BWWB to state officials, all of whom are white, and

5

to neighboring counties, which are predominantly white. Although the Defendant states that City ratepayers comprise only a "fraction" of total ratepayers, that argument ignores the City's significant expansion of the BWWB to provide services to nearby counties, which accounts for the City's greater portion of representation on the BWWB.

Further, although SB330 impacts only the BWWB.  SB330 is Pretextual Legislation, which although enacted with a stated purpose, is structured to achieve discriminatory goals.  Thus, SB330's legislative finding that poor management was "more likely to occur" because the City, which is predominately Black, appoints more members to the BWWB, constitutes a racially based motivation for that legislation. The legislature's conclusion that the size of a population somehow increases the likelihood of "failures of management" is clearly a pretense for stripping appointment authority from Birmingham and its residents, including the individual plaintiffs. There is no rational basis to support the legislature's findings or the necessity for SB330.

VOTING RIGHTS ACT VIOLATIONS

The Defendant's argument on this issue is not persuasive, and the authority upon which she relies supports the City Plaintiffs' position. A vote dilution claim is "cognizable under the amended version of section 2 of the Voting Rights Act." *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1555 (11th Cir. 1984).

SB330 diminishes the number of officials for whom City ratepayers may vote and, thereby, violates the Voting Rights Act because it has bearing "on the substance of voting power," because it diminishes the City Plaintiffs' representation on the BWWB. *Presley v. Etowah Cnty. Comm'n*, 502 U.S. 491, 503, 112 S. Ct. 820, 829, 117 L. Ed. 2d 51 (1992). As a result of its dilution of the City Plaintiffs' representation and because of its discriminatory purpose, SB330 constitutes a violation of the Voting Rights Act.

The Voting Rights Act forbids not only direct attacks on a person's right to vote, but also "'any practice "imposed or applied ... in a manner which results in a denial or abridgement of the right ... to vote on account of race or color ...." 42 U.S.C.A. § 1973(a) (West Supp.1983).'" *United States v. Marengo Cnty. Comm'n*, 731 F.2d at 1553. In this case, the Individual City Plaintiffs "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.' 42 U.S.C. § 1973(b)." *Badillo v. City of Stockton, Cal.*, 956 F.2d 884, 887-88 (9th Cir. 1992).

The Voting Rights Act applies when a person's right to vote is diluted.

> "First, '[t]o determine whether there have been changes with respect to voting, we must compare the challenged practices with those in existence before they were adopted.' *Presley v. Etowah County Comm'n*, 502 U.S. 491, 495, 112 S. Ct. 820, 825, 117 L. Ed. 2d 51 (1992). Only a change in such practices triggers § 5 scrutiny. Second, we must accord the Voting Rights Act 'the broadest possible scope' and interpret the Act to reach any enactment that affects voting 'in even a

7

minor way.' Allen v. State Bd. of Elections, 393 U.S. [544,] 566, 567, 89 S. Ct. [817] 832-33 (1969)] (emphasis added)."

*United States v. State of Louisiana*, 952 F. Supp. 1151, 1165 (W.D. La).

SB330 minimizes and cancels out the voting strength and political effectiveness of the Individual City Plaintiffs by substantially and immediately diminishing their appointment authority by 67% as compared to the voting strength of the ratepayers in predominantly white counties. Moreover, SB330 violates the Voting Rights Act by *abolishing* an elective office, i.e., the directors of BWWB and creating a new office dominated by White board members. *Presley v. Etowah Cnty. Comm'n*, 502 U.S. 491, 502-503 (1992),

As part of their claim, the City plaintiffs "must therefore establish that the particular jurisdiction challenged has a history of officially restricting, directly or indirectly, African-American access to the political process." *Reed v. Town of Babylon*, 914 F. Supp. 843, 885 (E.D.N.Y. 1996). Alabama has demonstrated an "extensive history of repugnant racial and voting-related discrimination." *Allen v. Milligan*, 599 U.S. 1, 22, 143 S. Ct. 1487, 1506, 216 L. Ed. 2d 60 (2023). The Alabama Legislature's attempts to reduce the voting power of Blacks and African Americans continues to the present day. *See Singleton v. Allen,* (Case No. 2:21-cv-01291-AMM, May 8, 2025) 2025 WL 1342947 (N.D. Ala. May 8, 2025) (determining that recent efforts to force Alabama to create non-racially discriminatory voting districts had again failed).

## DUE PROCESS

The individual City Plaintiffs assert violations of their substantive due process rights. SB330 deprives the individual City Plaintiffs and ratepayers of due process by reducing their voting power and authority with regard to the BWWB. SB330, as it is intended by the Alabama legislature to be applied, will lessen and dilute the representation of the individual City Plaintiffs/ratepayers, and it will do so in favor of affording greater representation to ratepayers in predominantly white counties. Accordingly, the Legislature's takeover of the BWWB is a deprivation of the City Plaintiffs' substantive Due Process rights. *Railroad Comm'n of Louisiana v. Cumberland Tel. & Tel. Co.*, 212 U.S. 414, 417, 29 S. Ct. 357, 358, 53 L. Ed. 577 (1909).

## **THE CITY PLAINTIFFS IN THEIR OFFICIAL CAPACITIES HAVE STANDING**

SB330 substantially impairs contracts between the City and the BWWB in violation of Art. I, § 10, Clause 1, which constitutes a distinct and palpable injury. *See CAMP Legal Defense Fund, Inc. v. City of Atlanta*, *supra*.

## THE CONTRACTS CLAUSE VIOLATIONS

"When evaluating a Contracts Clause claim, courts examine three factors: '(1) whether the law substantially impairs a contractual relationship; (2) whether there is a significant and legitimate public purpose for the law; and (3) whether the adjustments of rights and responsibilities of the contracting parties are based upon

7

reasonable conditions and are of an appropriate nature.'" *Case v. Ivey*, 542 F. Supp. 3d 1245, 1283 (M.D. Ala. 2021) (quoting *Vesta Fire Ins. Corp. v. State of Florida*, 141 F.3d 1427, 1433 (11th Cir. 1998)).

SB330 does not allow the City to be compensated for the use of its rights-of-way through its use of franchise rights acquired through agreements with the City. SB330 limits a regional water works board to paying only for goods and services.[3] Therefore, because SB330 prevents the regional water works board from compensating the City for its franchise rights, SB330 interferes with the City's contract rights. The City Plaintiffs contend that there is no ***significant and legitimate*** purpose for the creation of a regional water works board in place of the BWWB. Also, there is no reasonable condition or appropriate nature for the Alabama legislature's interference with the City's right to be paid for the franchise rights it has granted to the BWWB.

The City also has the right to approve amendments to the BWWB Articles of Incorporation, and SB330 destroys that right. *See* § 11-50-232, Ala. Code 1975. *See* § 11-50-232, Ala. Code 1975; *Opinion of the Justices,* 373 So. 2d 293, 296 (Ala. 1979) (holding that the legislature could not revoke a corporate charter without

---

[3] A franchise is not "goods or services"; instead, it is a consent to and grant of a privilege granted by a sovereign authority. *South Cent. Bell Tel. Co. v. State*, 789 So. 2d 133, 134 (Ala. 1999); *City of Mobile v. Farrell*, 158 So. 539, 540-41 (Ala. 1934).

violating Constitutional rights); and *Opinion of the Justices*, 333 So. 2d 125, 127 (Ala. 1976) ("The legislature cannot by legislative edict transfer property from one person to another.").

Further, SB330 interferes with the May 7, 2025, Buy/Sell Agreement entered into by the City and the BWWB. Every corporation formed under the Enabling Act, § 11-50-230 et seq., Ala. Code 1975, must have at least three directors to exist and not be dissolved. § 11-50-313, Ala. Code 1975. SB330 does not conflict with § 11-50-313(a)'s three-board-member requirement because it does not specify what happens on the conversion date if at least three regional water works board members had not been appointed.

The first person appointed to serve on the regional water works board created under SB330 was Phillip R. Wiedmeyer, who was appointed by the Jefferson County Commission President, James Stephens, on May 8, 2025, one day after the execution of the Buy/Sell Agreement. The City disputes the validity of that appointment. Regardless, the only method of complying with § 11-50-313(a) is for the terms of the existing BWWB members to continue in place until there are three appointments of regional board members. At the time of the May 7, 2025, Buy/Sell Agreement, there were not three or more newly-appointed members of a regional water works board, and, therefore, under § 11-50-313(a), the BWWB could validly enter into and execute that Agreement. *See Opinion of the Justices,* 373 So. 2d at 296 (holding that

11

the legislature could not revoke a corporate charter without violating Constitutional rights); *Opinion of the Justices*, 333 So. 2d at 127 ("The legislature cannot by legislative edict transfer property from one person to another.").

The scheme mandated by SB330 for the selection of water works board members violates the United States Constitution and federal law.

## VIOLATIONS OF STATE CONSTITUTIONAL LAW

SB330 violates the Alabama Constitution in several ways. First, the directors of the BWWB are public officers. *Roberts v. Fredrick,* 328 So. 2d 277, 279 (Ala. 1976). The directors of the BWWB could be removed from their positions only by the manner and mechanism provided in §§ 173 and 175 of the Alabama Constitution. *Roberts v. Fredrick, supra; Day v. Andrews*, 279 Ala. 563, 565, 188 So. 2d 523, 526 (1966). SB330's removal of BWWB directors by individual appointing authorities is violative of and repugnant to the state constitution.

Also, § 11-50-300.03(c)(3) of SB330 permits "elected public officials" to be appointed as directors on regional water works boards and provides that they be paid. The Alabama Constitution prohibits a person from holding more than one office of profit. Article XVII, § 280, Ala. Const. of 1901. *Smith v. State ex rel. Mayor & Town Council of Citronelle*, 276 Ala. 378, 379, 162 So. 2d 473, 474 (1964).

Further, sections 11-50-300.06 (c)(1) and (2) of SB330 provide that a regional

water works board may not make payments to a municipality except for "goods and services." The City of Birmingham has granted certain franchise right to the BWWB to operate in the public rights of way of the City. Therefore, SB330 infringes on the City's right to control the operation of public utilities and private enterprises within its rights of way under Ala. Const. Art. XII, section 220. Further, those franchise rights are not within the definitions of "goods and services," and, therefore, SB330 operates to prohibit payments from the regional board to a municipality for any franchise rights in violation of Art. XII, § 220, Ala. Const. of 1901.

The Defendant contends that this Court cannot exercise jurisdiction over the State law claims. However, the City Plaintiffs have pleaded sufficient federal questions to allow this Court to exercise supplemental jurisdiction over the state-law claims. *Jordan v. Carter*, 739 F. Supp. 3d 647, 659 (S.D. Ohio 2024). The nexus between the claims is that they are all based on the same set of facts, i.e., the common nucleus of operative facts, and the same arguments. *Id.*; *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118 (11th Cir. 1983).

## CONCLUSION

The City Plaintiffs contend that, for the reasons discussed above concerning violations of Equal Protection, Due Process, the Voting Rights Act, and the Contracts Clause, the City Plaintiffs assert that SB330 violates the United States Constitution and the Alabama Constitution and that they are entitled to a preliminary

injunction.

                Respectfully Submitted,

                */s/Nicole E. King*
                **Nicole E. King**
                **City Attorney**

                */s/ Joseph R. Abrams*
                **Joseph R. Abrams**
                **Chief Assistant City Attorney**

                */s/ Samantha A. Chandler*
                **Samantha A. Chandler**
                **Assistant City Attorney**

                */s/ Tracy L. Roberts*
                **Tracy L. Roberts**
                **Assistant City Attorney**

**OF COUNSEL:**
**CITY OF BIRMINGHAM**
**OFFICE OF THE CITY ATTORNEY**
710 North 20th Street, Suite 600
Birmingham, Alabama 35203
Telephone: (205) 254-2369
Facsimile: (205) 297-1802
nicole.king@birminghamal.gov
joseph.abrams@birminghamal.gov
samantha.chandler@birminghamal.gov
tracy.roberts@birminghamal.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 14th day of May, 2025, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF filing system, and served a copy of said pleading by personal service and/or by placing in the U.S. Mail, postage prepaid, affixed and addressed to:

James W. Davis
Deputy Attorney General
Office of the Attorney General, State of Alabama
501 Washington Avenue
Montgomery, Alabama 36104
Jim.Davis@AlabamaAG.gov

James Scott Woodard , Jr.
Assistant Attorney General
Office of the Attorney General, State of Alabama
501 Washington Avenue
Montgomery, Alabama 36104
Scott.Woodard@AlabamaAG.gov

                                                  */s/ Joseph R. Abrams*
                                                  **Of Counsel**